UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

NOV 2 9 2005

MICHAEL N. MILBY, CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALIGN TECHNOLOGY, INC., § § Plaintiff, § § v. § § WILLIS J. PUMPHREY, JR., DDS, P.C., § a Professional Corporation; WILLIS J. § PUMPHREY, DDS, PLLC, a Limited § Liability Company; WILLIS J. § PUMPHREY, JR., DDS, P.A., a § Professional Association; and WILLIS J. § PUMPHREY, DDS, an Individual, § § Defendants. § § § | CIVIL ACTION NO. H 05-4075 JURY DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

I.   SUMMARY OF THE ACTION

1.   Defendants Willis J. Pumphrey, an individual and his related professional corporations and associations, Willis J. Pumphrey, DDS, P.C., a Professional Corporation, Willis J. Pumphrey, DDS, P.A., a Professional Association, Willis J. Pumphrey DDS, PLLC, a Limited Liability Company ("Defendants") owe plaintiff Align Technology, Inc. ("Align") over $170,000 for products provided and services rendered by Align to Defendants over the past two years. Dr. Pumphrey is a dentist and former consultant to Align. Align is the market leader in invisible orthodontics.

2.   Defendants have purchased products and services from Align since early 2002. However, in recent years Defendants' practice has come under increasing financial pressure. This pressure has manifested itself in two ways relevant to the present dispute: (a) Defendants have become increasingly delinquent in their payments to Align, and (b) Defendants have made

ck 6142

repeated promises to pay, and Dr. Pumphrey has personally guaranteed payment of, this past due balance. Defendants have also made false representations regarding past payments intended to deceive Align into extending further credit and foregoing further collection activity.

3. By this Complaint, Align seeks monetary damages in an amount to be determined based on Defendants' failure to pay the amounts owed Align and defrauding Align into extending further credit and foregoing legal action.

**II. PARTIES**

4. Plaintiff Align is a Delaware corporation with its principal place of business in Santa Clara, California.

5. Defendant Willis J. Pumphrey, DDS is an individual residing in the State of Texas and can be served with process at 4126 Southwest Freeway, Suite 1610, Houston, Texas 77027.

6. Defendant Willis J. Pumphrey, Jr., DDS,. P.C. is a Texas Professional Corporation with its principal place of business in Houston, Texas. Defendant Willis J. Pumphrey, Jr., DDS,. P.C. can be served with process by serving its registered agent Willis J. Pumphrey, Jr. at 4126 Southwest Freeway, Suite 1610, Houston, Texas 77027.

7. Defendant Willis J. Pumphrey Jr., DDS, P.A. is a Texas Professional Association with its principal place of business in Houston, Texas. Defendant Willis J. Pumphrey Jr., DDS, P.A. can be served with process by serving its registered agent Willis J. Pumphrey, Jr. at 4126 Southwest Freeway, Suite 1610, Houston, Texas 77027.

8. Defendant Willis J. Pumphrey, DDS, PLLC is a Texas Limited Liability Company (LLC) with its principal place of business in Houston, Texas. Defendant Willis J. Pumphrey, DDS, PLLC can be served with process by serving its registered agent Willis J. Pumphrey at 4126 Southwest Freeway, Suite 1610, Houston, Texas 77027.

9. Unless the context otherwise indicates, defendant Willis J. Pumphrey, DDS, an individual, and all of the professional associations and corporations discussed above are collectively referred to as "Defendants." Dr. Pumphrey is the principal owner, officer, director and employee of each of the above referenced corporations and associations, and that for the purposes of this Complaint, Dr. Pumphrey has personally engaged in all actions that are alleged by Align to have been conducted by those associations and corporations.

10. Each of the above-referenced professional associations and corporations is an alter ego of defendant Willis J. Pumphrey, DDS, an individual, and there exists and at all relevant times has existed, a unity of interest and ownership between such defendants such that any separateness between them has ceased to exist, in that Willis J. Pumphrey, DDS, an individual, dominates, manages, and operates the associations and corporations to the detriment of Align. Adherence to the fiction of the existence of the above referenced corporations and associations as entities separate and distinct from Willis J. Pumphrey, DDS, an individual, would permit an abuse of corporate privileges and would sanction a fraud and promote injustice.

### III.   JURISDICTION

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the matter involves "citizens of different States" and the amount in controversy exceeds $75,000. Specifically, as described above, all Defendants are citizens of Texas and/or incorporated in Texas and each has a principal place of business in Texas. Align is incorporated in Delaware with its principal place of business in California.

### IV.   VENUE

12. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events and omissions giving rise to the claim occurred in this District. Additionally, Defendants reside in this District in that they maintain an office in this

District and transacted business in this District during the relevant period. Many of the actions, damages and other facts forming the basis of Align's claims occurred in Houston and surrounding areas, which are within the Southern District of Texas.

## V. FACTS

### A. The Invisalign System

13. Align designs, develops, manufactures and markets high technology orthodontic products. Align's core product is the INVISALIGN system, a proprietary method for treating crooked and misaligned teeth. The INVISALIGN system consists of a series of clear, removable devices that fit over a patient's teeth and gently and incrementally move the teeth into a desired final position. The INVISALIGN system uses cutting-edge, three-dimensional computer scanning and graphics to design and manufacture these customized orthodontic devices. Align's Internet-based software application allows dental professionals to simulate the treatment process in three dimensions, providing a novel diagnosis and treatment planning process.

### B. Defendants' Written Contract with Align

14. Beginning in or about May 2002, Defendants began purchasing products and services from Align. In doing so, Defendants entered into a written agreement with Align titled "Pricing, Terms & Conditions for Invisalign Products and Services" (the "Terms & Conditions"). Pursuant to the Terms & Conditions, Align agreed to provide and Defendants agreed to pay for Align's products and services. Specifically, the Terms & Conditions provide, in pertinent part, as follows:

> (a) "Placing of an order after any change to the Pricing, Terms & Conditions for Invisalign Products and Services shall constitute conclusive evidence

4

of your acceptance of the then current version of such terms and conditions."

(b)  "Payment for initial aligners is due from Doctor within sixty (60) days of invoice date. Payment for Services is due upon placement of an order for Services. All other products and fees are due within thirty (30) days of invoice date."

(c)  "Doctor agrees to indemnify . . . Align . . . against and from any and all . . .costs [or] expenses . . . of any kind, description or nature whatsoever (collectively, "Losses"), related to, pertaining to or arising from (i) Doctor's breach of or failure to abide by any term of this Agreement."

(d)  "When Doctor approves a Treatment Plan, Doctor is the party responsible for payment to Align."

C. **Defendants Fall Behind in Their Payments but Acknowledge Their Debt**

15.  By January 2004, Defendants owed Align more than $200,000 for products provided and services rendered under the Terms & Conditions, approximately 40% of which was past due. By March 2005, Defendants' balance was $239,356, only $8,273 of which was not past due. The remaining $231,083 was past due with $192,995 over 60 days past due.

16.  In October 2004, Align's efforts to collect the past due amounts began meeting with increased resistance from Defendants. Calls by Align to Defendants were routinely ignored and when Align did reach Defendants or their employees, Defendants and their employees either refused to make any promises as to when or how much they would pay or knowingly made false promises and false statements.

17. At no time during Align's conversations with Defendants did they, or any of their employees, dispute the validity or amount of their debt to Align. In fact, they explicitly acknowledged the validity and amount of the debt both orally and in writing on numerous occasions, including, but not limited to, an undated letter sent by Dr. Pumphrey to Align in late 2004 or early 2005.

### D. Defendants Defraud Align into Foregoing Legal Action and Extending Further Credit

18. As Defendants' balance became increasingly past due, Align planned to put Defendants' account on credit hold, refuse new orders from Defendants, and initiate aggressive efforts to collect Defendants' past due balance. When Defendants learned of this plan, Defendants and their employees made statements to Align that they knew were false and promises to Align that Defendants had no intention of keeping in an effort to secure additional credit from Align, to induce Align to continue shipping additional product and providing additional services, and to forego immediate collection action by Align.

19. Specifically, Defendants made specific false representations to Align, including but not limited to: (a) a statement on or about December 4, 2003 that they had mailed Align a check for $8,000; (b) a statement on or about December 17, 2003 that they would pay Align an additional $38,000 within the week; (c) a statement on or about September 9, 2004 that they had mailed a check to Align for $10,000; and (d) a statement on or about September 14, 2004 that they would pay $25,000 to Align during the week of September 20th, 2004.

20. In truth: (a) Defendants had not mailed a check to Align on or about December 4, 2003; (b) when Defendants made their promise to pay Align $38,000 on or about December 17, 2003, they had no intention of fulfilling it and did not fulfill it; (c) Defendants had not mailed a check to Align on or about September 9, 2004; and (d) when Defendants promised on September

6

20, 2004 that they would pay $25,000 to Align during the week of September 20, 2004, they had no intention of doing so and Defendants admitted as much on or about September 24, 2004.

### E. Defendant Willis J. Pumphrey Enters Into an Oral Contract with Align Personally Guaranteeing the Debt

21. As detailed above, Align intended to put Defendants' account on credit hold, refuse new cases from Defendants and initiate aggressive efforts to collect Defendants' past due balance. In consideration of Align extending Defendants additional credit, shipping additional product and foregoing immediate collection action, on or about January 12 and 20, 2005, and February 7 and 8, 2005, Defendant Willis J. Pumphrey, an individual, orally agreed to be personally liable for the entire amount of: (a) his then-current balance with Align, and (b) any additional balances he might accrue with Align in the future.

22. In the same conversations on or about January 12 and 20 and February 7 and 8, 2005, Defendant Willis J. Pumphrey, DDS, an individual, in consideration of Align foregoing immediate legal action and providing Defendants with additional products and services, also promised to sign a written personal guarantee of Defendants' debt memorializing his earlier oral guarantee.

23. Dr. Pumphrey's oral personal guarantee of the debt is valid and enforceable notwithstanding the statute of frauds under several doctrines of Texas law, including the doctrine of promissory estoppel.

24. The oral personal guarantee is also enforceable based on part performance. In January through August, 2005, Dr. Pumphrey made weekly payments pursuant to the oral agreement and Align ceased its attempts to collect Dr. Pumphrey's debts while he was making weekly payments.

25. In the alternative, Dr. Pumphrey's oral personal guarantee is valid and enforceable under the "main purpose doctrine." Specifically (a) Willis J. Pumphrey DDS, an individual, intended to become primarily liable for the debt, making it his original obligation, rather than to become a surety for his professional corporation; (b) there was substantial consideration for the promise, including, *inter alia*, Align's continued supply of products and services to Dr. Pumphrey; moreover, Align's continued supply of products and services was valuable to Dr. Pumphrey personally because he personally received hundreds of thousands of dollars in profits from his corporation's sale of products and services supplied by Align; and (c) receipt of this consideration was Dr. Pumphrey's main purpose and leading object in making the personal guarantee, and the consideration given for the guarantee was primarily for Dr. Pumphrey's personal use and benefit. Specifically, profits earned on the resale of products and services supplied by Align would not be retained by Dr. Pumphrey's professional corporations and associations but would flow to Dr. Pumphrey personally. Moreover, the agreement to temporarily forego further collection action for as long as Dr. Pumphrey made weekly payments was valuable to Dr. Pumphrey personally because further collection actions would have diminished Dr. Pumphrey's income from his businesses and Dr. Pumphrey knew he would be personally named in any lawsuit attempting to collect the debt.

**F. Defendants Promise to Pay off their Debts.**

26. On or about December 13, 2004, Defendants agreed to make payments of $10,000 against their balance every week until a minimum of $30,000 had been received on or before December 29, 2004. Defendants promised to pay the account balance in full on January 28, 2005. Defendants defaulted on this agreement on or before December 27, 2004 by failing to make the promised weekly $10,000 payments.

27. On or about January 12, 2005, Defendant Pumphrey told Align CFO Eldon Bullington that Defendants would not pay off their balance at one time on January 28, 2005 as they had promised to do but would pay $5,000 per week until their balance was paid. In consideration of this promise, Align permitted Defendants to continue purchasing products and services from Align, provided Defendants paid for those products and services at the time they placed their orders.

### G. Defendants Ignore the Terms of Their Agreements

28. Contrary to his bargained-for promise, Defendant Pumphrey never signed a written guarantee memorializing his earlier oral promise to be personally liable for the debt. Also contrary to their bargained-for promise, in their letter of August 16, 2005, Defendants refused to make their promised weekly payments to Align in September 2005 but promised, in writing, to "resume regular payments starting October 3, 2005." However, in an October 18, 2005 telephone conversation with Align, Defendants refused to make their promised weekly payments in October 2005. Defendants did not, in fact, make their weekly payments in September or October 2005.

### H. Defendants Refuse Align's Efforts to Informally Resolve the Issue

29. On October 28, 2005, Align, through its attorneys, sent Defendants a letter via certified mail further notifying Defendants of their outstanding balance and obligation to pay and seeking resolution of the matter without the need for litigation. Defendants refused to accept Align's certified letter.

30. On November 14, 2005, Align, through its attorneys, sent Defendants the same letter via Federal Express. Defendants refused to accept Align's Federal Express envelope.

9

## FIRST CAUSE OF ACTION
### (Breach of Contract – Against All Defendants)

31. Align realleges and reincorporates by reference the allegations of paragraphs 1 through 30 of this Complaint.

32. Align and entered into a valid written contract, namely the Terms & Conditions, with all Defendants for the manufacture and shipping of orthodontic devices as discussed, *inter alia*, in paragraph 10. Under the Terms & Conditions, Dr. Pumphrey was personally liable for payment for products provided and services rendered. In addition to his written agreement under which he was personally liable, Dr. Pumphrey orally agreed to be personally liable for sums owed under the Terms & Conditions.

33. Pursuant to the Terms & Conditions, Align designed, manufactured and shipped orthodontic devices and provided other services to Defendants. By designing, manufacturing and shipping orthodontic devices at Defendants' request, Align performed its obligations under the Terms & Conditions, including all conditions precedent, except to the extent performance of certain obligations was excused.

34. Pursuant to the oral agreement, Align continued to supply Defendants with products and services. Also pursuant to the oral agreement, Align did not undertake further attempts to collect the entire balance due. By doing so, Align performed its obligations under the oral agreement, including all conditions precedent, except to the extent performance of certain obligations was excused.

35. Defendants have not paid Align amounts owed under the Terms & Conditions as of the date of the filing of this Complaint, and continue to owe money to Align on past invoices, all of which constitute an unjustified and unexcused failure to perform. Defendants have breached the Terms & Conditions by not paying the full amounts due for services provided by

Align. To date, Defendants have improperly and unlawfully withheld and refused payment in full, without excuse or justification.

36. Defendant Pumphrey has also failed to sign a personal guarantee as of the date of the filing of this Complaint which constitutes an unjustified and unexcused failure to perform. Defendant Pumphrey has breached the oral agreement by not signing the promised written personal guarantee. To date, Defendant Pumphrey has improperly and unlawfully withheld and refused to sign the guarantee without excuse or justification.

37. As a result of Defendants' breach of the Terms & Conditions, Align has sustained damages in the amount of at least $171,536 plus interest, or in an amount equal to an award of damages to be determined according to proof at trial.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment – Against All Defendants)

38. Align realleges and reincorporates by reference the allegations of paragraphs 1 through 37 of this Complaint.

39. As described above, Align performed a variety of services and provided deliverables to Defendants at Defendants' request Align also provided tangible goods to Defendants pursuant to the Terms & Conditions.

40. Defendants accepted these services and deliverables, encouraged Align to continue performing pursuant to the Terms & Conditions and repeatedly promised to pay Align for such services and deliverables.

41. Defendants' material representations induced Align to assign a substantial number of employees and exert time, burden and business relationship commitments to Defendants in expectation of compensation for such services.

11

42.     Align has repeatedly demanded payment from Defendants. Defendants, however, have not paid Align in full for the services and deliverables provided. Accordingly, Defendants have been unjustly enriched to Align's detriment.

43.     As a result, Align is entitled to an award of damages for the amount Defendants have been unjustly enriched, in the amount of approximately $171,536, plus interest, or in an amount equal to an award of damages to be determined according to proof at trial.

### THIRD CAUSE OF ACTION
### (Quantum Meruit and Quantum Valebant – Against All Defendants)

44.     Align realleges and reincorporates by reference the allegations of paragraphs 1 through 43 of this Complaint.

45.     As discussed above, Align performed services for Defendants at Defendants' request. Align also provided tangible goods to Defendants.

46.     Defendants' material representations induced Align to assign a substantial number of employees and exert time, burden and business relationship commitments to Defendants in expectation of compensation for such services.

47.     Defendants accepted these services and deliverables and promised to pay for their reasonable value. The fair and reasonable value of the services and deliverables provided to Defendants is approximately $171,536.

48.     Align has repeatedly demanded appropriate payment from Defendants. Defendants, however, have repeatedly refused to pay Align in full for the services and deliverables.

49.     As a result, Defendants have been unjustly enriched and Align is entitled to an award of damages equal to the reasonable value of the services and deliverables provided by

Align, in the amount of approximately $171,536, plus interest, or in an amount equal to an award of damages to be determined according to proof at trial.

## FOURTH CAUSE OF ACTION
### (Open Book Account – Against All Defendants)

50. Align realleges and reincorporates by reference the allegations of paragraphs 1 through 49 of this Complaint.

51. By accepting the Terms & Conditions, and establishing an arrangement of payment by use of invoices, Defendants established an open book account with Align. Defendants established a revolving charge account with Align.

52. Pursuant to that revolving charge account, Defendants purchased certain wares, products, merchandise, services and Deliverables, as more fully discussed above, thereby obligating Defendants to pay the invoices reflecting those purchases.

53. On its open book account with Align, Defendants are currently indebted to Align in the amount of approximately $171,536.

54. Despite Align's repeated requests and demands, Defendants still have not paid their account in full. Align, therefore, demands approximately $171,536, plus interest, attorneys' fees, and all other proper relief to be determined according to proof at trial.

## FIFTH CAUSE OF ACTION
### (Fraud and Fraud in the Inducement – Against All Defendants)

55. Align realleges and reincorporates by reference the allegations of paragraphs 1 through 54 of this Complaint.

56. Defendants made specific false representations to Align including but not limited to: (a) a statement on or about December 4, 2003 that they had mailed Align a check for $8,000;

13

(b) a statement on or about December 17, 2003 that they would pay Align an additional $38,000 within the week; (c) a statement on or about September 9, 2004 that they had mailed a check to Align for $10,000; (d) a statement on or about September 14 that they would pay $25,000 to Align during the week of September 20th, 2004; and (e) statements on or about January 12, February 7 and February 8, 2005 that Dr. Pumphrey would sign a written personal guarantee memorializing his earlier oral agreement to be personally responsible for Defendants' outstanding debts to Align.

57.     These statements were false. In truth: (a) Defendants had not mailed a check to Align on or about December 4, 2003; (b) when Defendants made their promise to pay Align $38,000 on or about December 17, 2003 they had no intention of fulfilling it; (c) Defendants had not mailed a check to Align on or about September 9, 2004; (d) when Defendants promised on September 20, 2004 that they would pay $25,000 to Align during the week of September 20, 2004, they had no intention of doing so and Defendants admitted as much on or about September 24, 2005; and (e) when Dr. Pumphrey made his promises to sign a written personal guarantee, he had no intention of doing so.

58.     Defendants made these false statements knowing that they were false. Defendants knew that they had no intention of paying money owed to Align. They knew that they had not mailed checks to Align in December 2003 and September 2004 and they knew that they had no intention of signing a written guarantee memorializing their earlier oral and written agreements.

59.     Defendants made these false statements with the design and intent that Align would rely on these statements by (a) continuing to ship goods and provide services to Defendants; (b) extending further credit to Defendants; and (c) temporarily foregoing further collection or legal action against Defendants.

14

60. Align did in fact rely on these statements by (a) continuing to ship goods and provide services to Defendants; (b) extending further credit to Defendants; and (c) temporarily foregoing further collection or legal action against Defendants.

61. Align's reliance on these statements was reasonable. Defendants had been long term customers of Align. Align believed that Defendants would fulfill their admitted legal, contractual and ethical duties. Since Defendant Pumphrey had a pre-existing legal obligation to be personally liable for amounts owed under the Terms & Conditions, by virtue of: (a) his agreement to the original Terms & Conditions; (b) his subsequent oral agreement to be personally liable; and (c) the fact that he was an alter ego of his professional corporation, it seemed reasonable that he would be willing to memorialize his oral agreement in a subsequent writing, particularly since Align had fulfilled its end of the bargain by continuing to supply Defendants, extending further credit and temporarily foregoing legal action.

62. Align was damaged by Defendants' false statements and its actual and justifiable reliance on these statements. Among other things, Align has parted with further labor and valuable goods. It has extended further credit which Defendants have not repaid and it has lost the use of the money Defendants owe it for a substantial period of time.

## SIXTH CAUSE OF ACTION
### (Promissory Eestoppel – Against Defendant Pumphrey)

63. Align realleges and reincorporates by reference the allegations of paragraphs 1 through 62 of this Complaint.

64. As discussed above, Defendant Pumphrey orally agreed to be personally liable for the entire amount of: (a) his then-current balance with Align, and (b) any additional balances he

might accrue with Align in the future. Defendant Pumphrey further orally promised to sign a written personal guarantee of Defendants' debt memorializing his oral guarantee.

65. Defendant Pumphrey made these promises with the design, knowledge, and intent that Align would rely on these statements by Defendant Pumphrey. Align acted in substantial reliance on these promises to its detriment, including but not limited to performing a variety of services and providing deliverables and tangible goods to Defendant Pumphrey.

66. As a result, Align is entitled to an award of damages equal to the reasonable value of the services and deliverables provided by Align, plus interest, attorneys' fees, and all other proper relief to be determined according to proof at trial.

## VI. AGENCY AND RESPONDEAT SUPERIOR

67. Paragraphs 1- 66 are incorporated by reference herein.

68. All of the acts complained of were committed by persons who were employees and actual or implied or apparent agents of Defendants and who were acting within that scope.

## VII. JURY TRIAL DEMAND

69. Align hereby demands trial by jury of all issues triable to a jury.

## VIII. PRAYER FOR RELIEF

WHEREFORE, plaintiff Align prays for relief and judgment against Defendants, and each of them, as follows, according to proof at trial:

1. Actual damages in an amount in excess of $75,000;

2. Punitive damages;

3. All costs of court;

4. Attorneys' fees;

5. Pre-judgment and post-judgment interest; and

6. All other relief the Court deems just and equitable.

Respectfully submitted,
SMYSER KAPLAN & VESELKA, L.L.P.

*[signature]*

Lee L. Kaplan
State Bar No. 11094400
Federal ID No. 1840
700 Louisiana, Suite 2300
Houston, Texas 77002
Telephone:   (713) 221-2300
Facsimile:   (713) 221-2320

ATTORNEY-IN-CHARGE FOR
PLAINTIFF ALIGN TECHNOLOGY, INC.

Of Counsel:

Jason Luong
State Bar No. 24026996
Federal ID No. 29858
SMYSER KAPLAN & VESELKA, L.L.P.
700 Louisiana, Suite 2300
Houston, Texas 77002
Telephone:   (713) 221-2300
Facsimile:   (713) 221-2320

Mark E. McKeen
State Bar No. 130950
Thomas A. Counts
State Bar No. 148051
Richard E. Elder
State Bar No. 205389
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street
Twenty-Fourth Floor
San Francisco, CA  94105-3441
Telephone:   (415) 856-7000
Facsimile:   (415) 856-7100

ATTORNEYS FOR PLAINTIFF
ALIGN TECHNOLOGY, INC.